UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MICHAEL ALLEN HUFF,

    Plaintiff,

    v.      CAUSE NO.: 3:18-CV-121-PPS-MGG

STEPHEN TABLER,

    Defendant.

OPINION AND ORDER

Michael Allen Huff, a prisoner without a lawyer, proceeds on claims against Stephen Tabler, alleging that a transfer to another jail constituted retaliation in violation of the First Amendment and punishment without due process in violation of the Fourteenth Amendment. The defendant filed a motion for summary judgment, arguing that Huff was not entitled to remain at a particular prison and that Huff cannot demonstrate a claim of First Amendment retaliation.

Huff says that the motion for summary judgment should be denied pursuant to Fed. R. Civ. P. 56(d)(1), which allows the court to deny summary judgment if "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." According to Huff, Tabler testified at a deposition in another case and in that testimony, he admitted to transferring inmates to other jails for the purpose of avoiding lawsuits. Huff tells me he could not obtain the transcript of that testimony. I will assume that the allegation regarding Tabler's testimony in that other case is true. Huff also states that correctional staff have taken

documentary evidence from him, but the description of this evidence is too vague to warrant a denial of summary judgment under Fed. R. Civ. P. 56(d)(1). As a result, I will proceed to the merits of the summary judgment motion.

**Factual Background**

Stephen Tabler worked as the jail commander at the Pulaski County Jail. ECF 40-1. On August 16, 2016, Huff received a disciplinary write up for destruction of jail property, and he was placed in lockdown. ECF 49 at 1. Three days later, Huff told Phyllis Foust, an assistant jail commander, that he should have received a disciplinary hearing within 72 hours and demanded that he be returned to the general population. ECF 48 at 16-17. Foust rejected the demand and prepared another disciplinary write up. *Id.* at 17-18. Huff responded in a rude and insolent manner; he signed the papers, threw them in the air, and told Foust to "Fetch, bitch." *Id.* at 18. He then threatened Foust telling her, "You wait till I get out. Just wait till I get out." ECF 49 at 2. He then said, "Motherfucker, I will show you assault on an officer." *Id.* at 30; ECF 49 at 2. He then kicked his cell door for an hour, pushed his food trays out the door, but calmed down once Foust left. ECF 48 at 18-19. Four days later Tabler transferred Huff to the Starke County Jail, where he stayed for two months. ECF 40-1.

At the Starke County Jail, Huff was deprived of recreation for days at a time, was assaulted by other inmates, and maced by the jail officials. ECF 1. The food was also inferior, and he did not know anybody. *Id.* at 2. Because he was unable to contact his family and attorney, the transfer also resulted in the loss of visits, mail, and money deposits and interfered with his pending legal matters. *Id.* Nevertheless, Huff generally

2

preferred the conditions of the Starke County Jail over the Pulaski County Jail because the Pulaski County Jail staff were, in his words, really "childish and petty." ECF 48 at 35-36. At his deposition, which took place at the Pulaski County Jail, Huff testified:

> **Defense Counsel:** So you were mad that you had been transferred in the first place?
>
> **Huff:** Yeah.
>
> **Defense Counsel:** Okay. But you were happy to be back here because you like this jail better than Starke; right?
>
> **Huff:** Actually, I like Starke way better than here.
>
> **Defense Counsel:** Oh, okay. Because . . .
>
> **Huff:** The jail itself is better. You know, when I went there, I am not -- I have never been to Knox before, so I didn't know anybody. I didn't have any way to get a hold of anybody. They didn't let me take my address book with my phone numbers. They didn't let me take nothing, so I couldn't get a hold of nobody. But like here, they're -- I don't know how to explain it. They're really petty. They are really childish about stuff. Like, okay, for example, when the girls are in the hallway, they're told they're not even allowed to turn their heads or they get lockdown. In a real jail, like Elkhart, you're in the hallway with girls all day long. Any time you go to court or medical or anything like that, you are with females. They don't care about that. In Starke County, they don't care about it. Just little stuff like that. They are really petty and childish about it.

*Id.*

Tabler swears in his affidavit that he transferred Huff to defuse the escalating tensions between Huff and the jail staff and to facilitate the safe and efficient operation of the Pulaski County Jail. ECF 40-1. He was informed that Huff had yelled profanities at Foust and threw paperwork at Foust and that Foust felt threatened and intimidated. *Id.* In the response to the motion for summary judgment, Huff states that inmates were

3

transferred from the Pulaski County Jail for the purpose of avoiding lawsuits. ECF 44 at 1. He states that he told several jail staff members that he would sue and told Foust this shortly before his transfer. *Id.* at 2.

## Discussion

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* In determining whether summary judgment is appropriate, the deciding court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). "However, our favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture." *Fitzgerald v. Santoro*, 707 F.3d 725, 730 (7th Cir. 2013) (citing *Harper v. C.R. England, Inc.*, 687 F.3d 297, 306 (7th Cir. 2012)).

Huff proceeds on a First Amendment claim, alleging that Tabler transferred him to the Starke County Jail in retaliation for his complaints about the timing of his disciplinary hearing. "To prevail on his First Amendment retaliation claim, [a plaintiff] must show that (1) he engaged in activity protected by the First Amendment; (2) he

4

suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (quotation omitted).

Tabler argues that he is entitled to summary judgment because, in light of Huff's misconduct, he would have transferred Huff even if Huff had not complained about the timing of his disciplinary hearing. For a period of time, the law governing proof of causation in First Amendment tort cases was somewhat in flux. The Seventh Circuit tried to give some more clarity to it in *Greene v. Doruff*, 660 F.3d 975, 980 (7th Cir. 2011). Here's how they went about doing that:

> [T]he burden of proof relating to causation is divided between the parties in First Amendment tort cases. To make a prima facie showing of causation the plaintiff must show only that the defendant's conduct was a sufficient condition of the plaintiff's injury. The defendant can rebut, but only by showing that his conduct was not a necessary condition of the harm—the harm would have occurred anyway.

*Id.* " A prisoner who has evidence that officials were motivated to discipline the prisoner because of protected speech cannot prevail if the officials show, without contradiction, that they would have disciplined him anyway for a legitimate reason." *Harris v. Walls*, 604 F. App'x 518, 521 (7th Cir. 2015). "In that case, the improper motive would have done no work, had no effect, left the world unchanged." *Id.* (quotation omitted).

Given Mr. Huff's performance in front of Ms. Foust -- telling her to "fetch, bitch" and that "motherfucker, I will show you assault on an officer" -- I am convinced that

5

Huff would have been transferred even if he hadn't said a peep about his grievance. It is undisputed that, in the week preceding the transfer, Huff was issued two disciplinary write ups, yelled profanities at the assistant jail commander, threatened staff with violence, and kicked the door of his cell for an hour straight. Tabler attests that he transferred Huff to defuse the escalated tensions between Huff and the jail staff and to facilitate the safe and efficient operation of the Pulaski County Jail. Considering Huff's misconduct, this reasoning was both a legitimate and sufficient basis to transfer Huff, and Huff offers no evidence to dispute that this reasoning, in fact, motivated Tabler to transfer him. As a result, even if Tabler also had an improper motive, it did no work in effecting the transfer. In sum, Tabler has shown that he is entitled to summary judgment on Huff's First Amendment retaliation claim, and the motion for summary judgment is granted with respect to that claim.

Huff also alleges that the transfer constituted punishment without due process in violation of the Fourteenth Amendment. At the time of the transfer, Huff was a pretrial detainee. "[T]he Fourteenth Amendment's Due Process Clause prohibits holding pretrial detainees in conditions that amount to punishment." *Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 856 (7th Cir. 2017) (quotation omitted). "[P]unishment can consist of actions taken with an expressed intent to punish," or, "in the absence of an expressed intent to punish, a pretrial detainee can nevertheless prevail by showing that the actions are not rationally related to a legitimate nonpunitive governmental purpose or that the actions appear excessive in relation to that purpose." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015) (quotation omitted)

6

Tabler maintains that he did not transfer Huff as punishment but instead sought to deescalate tensions between Huff and jail staff and to facilitate the safe and efficient operation of the Pulaski County Jail. As referenced above, in the week preceding the transfer, Huff was issued two disciplinary write ups, yelled profanities at the assistant jail commander, threatened staff with violence, and kicked the door of his cell for an hour straight. The record also demonstrates that Tabler was aware of this course of conduct and that the assistant jail commander felt threatened and intimidated by Huff's outburst. Additionally, Huff testified that he found the staff at the Starke County Jail more tolerable and preferable to the Pulaski County Jail staff, which indicates that Tabler's plan had, at least, some merit. As a result, I find that transferring Huff to the Starke County Jail was rationally related to the goal of deescalating tensions and facilitating the safe and efficient operation of the jail. Therefore, the motion for summary judgment is granted with respect to the Fourteenth Amendment claim of punishment without due process.

For these reasons, the Court:

(1) GRANTS the motion for summary judgment (ECF 38); and

(2) DIRECTS the clerk to enter judgment and to close this case.

**SO ORDERED.**

ENTERED: March 15, 2019.

                                            /s/   Philip P. Simon
                                            PHILIP P. SIMON, JUDGE
                                            UNITED STATES DISTRICT COURT